```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
                      EASTERN DIVISION
```

| | |
|---|---|
| **MEYER TECHNOLOGY SOLUTIONS, LLC,**  Plaintiff,  v.  **KAEGEM CORP.,**  Defendant. | Case No. 17 C 281  Judge Harry D. Leinenweber |
| **KAEGEM CORP.,**  Counter-Plaintiff,  v.  **MEYER TECHNOLOGY SOLUTIONS, LLC and MICHAEL MEYER,**  Counter-Defendants. | |

# ORDER

Counter-Defendants' Motion to Dismiss Counterclaims [ECF No. 24] is granted in part and denied in part.

# STATEMENT

Pursuant to an April 19, 2013 consulting agreement, Plaintiff and its sole member, Michael Meyer ("Meyer"), developed a software platform known as "GCT" for Defendant. When Defendant allegedly ceased paying for certain upgrades to the GCT software, Plaintiff filed this lawsuit for breach of contract. Defendant then asserted nine (9) counterclaims against Plaintiff and Meyer. Defendant alleges that, after

receiving ultimatums from Meyer regarding payment for GCT software upgrades, it learned in December 2014 that Meyer had accessed GCT accounts without authorization and removed certain passwords and client information. In February 2015, after determining that Meyer was at fault, Defendant's insurer paid a claim for business interruption. Defendant asserts on information and belief that Meyer continued in this manner to access its software and client information as recently as April 2016. Plaintiff and Meyer have moved to dismiss Defendant's counterclaims under FED. R. CIV. P. 12(b)(6). The Court takes each counterclaim in turn, assuming the truth of well-pleaded factual allegations and drawing all inferences therefrom in favor of Defendant (the non-movant). *See, Berger v. Nat'l Collegiate Athletic Ass'n,* 843 F.3d 285, 289-90 (7th Cir. 2016).

Defendant brings its first two counterclaims against Plaintiff and Meyer under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.*, and the Stored Communications Act, 18 U.S.C. § 2701 *et seq.* The statutes require that a civil plaintiff commence its action within 2 years of discovering the damage from the unauthorized access. *See,* 18 U.S.C. § 1030(g) (requiring a civil suit to be brought "within 2 years of the date of the act complained of *or the date of the discovery of the damage*") (emphasis added); 18 U.S.C. § 2707(f) ("A civil action under this section may not be commenced later than two years after the date upon which the claimant *first discovered* or had a reasonable opportunity to discover the violation.") (emphasis added). Here, Defendant learned of the unauthorized access in December 2014, notified its clients of the breach in January 2015, and was paid on its insurance claim for the attendant interruption to its business in February 2015. However, Defendant first filed its counterclaims on June 8, 2017

– well over two years after it discovered the damage flowing from the unauthorized access, and thus outside the statute of limitations. *See, Sewell v. Bernardin,* 795 F.3d 337, 340-42 (2d Cir. 2015). That Meyer may have continued accessing certain of Defendant's business information housed on the GCT platform in the same fashion as recently as April 2016 is irrelevant for timeliness purposes. The "continuing violation" exception to federal statutes of limitations only allows suit to be delayed in cases where the first instance of misconduct may be insufficient – and indeed the "cumulative effect" of a series of acts is necessary – to make out an actionable claim. *Limestone Dev. Corp. v. Village of Lemont, Ill.,* 520 F.3d 797, 801 (7th Cir. 2008). Such is not the case here, meaning that Defendant's counterclaims under the Computer Fraud and Abuse Act and the Stored Communications Act must be dismissed as time-barred.

Defendant's third counterclaim charges Plaintiff and Meyer with trade secret misappropriation under the Illinois Trade Secrets Act. Defendant asserts that the information accessed by Plaintiff and Meyer was "database information of clients and passwords," client financial information, and other client customer information of economic value, including customer lists, that gave Plaintiff and Meyer an economic advantage in the marketplace and that Defendant took reasonable efforts to keep confidential. Combined with the balance of the counterclaim and the Confidentiality provision in the contract, Defendant's identification of general categories of information and allegation of reasonable efforts to maintain confidentiality state a claim for misappropriation of trade secrets under Illinois law. *See, e.g., Mission Measurement Corp. v. Blackbaud, Inc.,* 216 F.Supp.3d 915, 920-22 (N.D. Ill. 2016) (collecting cases). Thus, the Motion to Dismiss is denied in

relevant part, although at the merits stage Defendant will need to identify with specificity its allegedly misappropriated trade secrets.

Fourth, Defendant brings its own claim against Plaintiff for breach of contract, alleging that Plaintiff failed to provide Defendant with the entire right, title, and interest to the GCT software despite Defendant's payment for all services (other than upgrades) pertaining to GCT software. Plaintiff argues for dismissal based on Defendant's admission that it did not pay for all upgrades to the software and the indiscriminate language of the contract, which obligated Plaintiff to transfer title only once it was "paid for services." Without any other guidance to interpreting the contract – and in light of its lack of an integration clause – the Court finds that Defendant has stated an actionable breach-of-contract claim. Defendant's position that Plaintiff was obligated to transfer title to the initial, paid-up version of the GCT software is at least as plausible as Plaintiff's reading of the contract, which holds that Defendant was only entitled to ownership of the paid-up GCT software platform once Plaintiff was remunerated for each subsequent upgrade it developed for the platform. That several months allegedly passed between Defendant's payment in full for the platform and the parties' first discussion of upgrades bolsters Defendant's reading. Because the Court cannot determine whether the contract shows unambiguously on its face that the relief prayed for is not warranted, *LaSalle Nat'l Bank v. Service Merch. Co.*, 827 F.2d 74, 78 (7th Cir. 1987), Plaintiff's Motion to Dismiss is denied in relevant part.

Defendant's fifth counterclaim alleges that Meyer, who owns 15,000 shares of Defendant's closely held common stock, breached his fiduciary duty to Defendant. Meyer argues that Defendant

fails plausibly to allege that he owed Defendant a fiduciary duty, because the percentage of his stock ownership is unclear and the work he performed for Defendant was as an independent contractor. Interpreting Illinois law, the Seventh Circuit has held that "a shareholder in a close corporation owes a duty of loyalty to the corporation and to the other shareholders" and that "[m]inority shareholders have an obligation as *de facto* partners in the joint venture not to do damage to the corporate interests." *Rexford Rand Corp. v. Ancel,* 58 F.3d 1215, 1218-19 (7th Cir. 1995). Meyer cites no authority to establish that a minority shareholder's work as an independent contractor suspends his duty of loyalty to the close corporation, and indeed such a contention seems irreconcilable with the facts and logic of *Rexford*. Thus, Defendant has alleged a plausible claim that Meyer breached his fiduciary duty to Defendant by disabling company software, accessing company email accounts, and causing the loss of Defendant's clients.

In response to the Motion to Dismiss, Defendant requests leave to amend its sixth and seventh counterclaims for tortious interference with contractual relationships and interference with prospective economic advantage, respectively, to allege the required action directed toward a specific third party. *See, Boffa Surgical Group LLC v. Managed Healthcare Assocs., Ltd.,* 47 N.E.3d 569, 577-78 (Ill. App. 2015). Neither Plaintiff nor Meyer appears to oppose amendment, and the Court accordingly grants Defendant leave to amend these two counts.

Defendant's eighth counterclaim invokes Illinois conversion law and avers that Plaintiff unlawfully retained possession and control of Defendant's GCT software – presumably by accessing Defendant's client information and refusing to "restore" the software or "tender the access code." Plaintiff contends that

software is intangible property not amenable to conversion. As a matter of Illinois law, the Court agrees. *See, First Nat'l Bank of Springfield v. Dept. of Revenue,* 421 N.E.2d 175, 177 (Ill. 1981). Whatever the wisdom of expanding the sweep of the conversion tort, the Seventh Circuit has emphatically characterized Illinois law as refusing to "recognize an action for conversion of intangible rights." *Am. Nat'l Ins. Co. v. Citibank,* 543 F.3d 907, 910 (7th Cir. 2008); *accord, Joe Hand Promotions, Inc. v. Lynch,* 822 F.Supp.2d 803, 809 (N.D. Ill. 2011) ("The Seventh Circuit thus agrees that Illinois courts have not expanded the tort of conversion, which should remain tethered to its common law roots requiring tangible property or some connection to a tangible document."). Defendant has not alleged facts suggesting that its rights to the software merged into something tangible that was itself converted, nor can its counterclaims be read to request return of physical items remaining in Plaintiff's possession. *See, David Mizer Enters., Inc. v. Nexstar Broadcasting*, *Inc.,* No. 14 C 2192, 2015 WL 469423, at *4-5 (C.D. Ill. Feb. 3, 2015). To the extent Defendant charges Plaintiff with assuming unauthorized control over tangible information housed within the software, its current allegations do not suggest that this material was distinct from the allegedly misappropriated trade secrets recited in Defendant's third counterclaim. As such, the Illinois Trade Secrets Act preempts Defendant's currently pled conversion counterclaim inasmuch as it may implicate tangible information. *See,* 765 Ill. Comp. Stat. 1065/8(a); *AutoMed Techs., Inc. v. Eller,* 160 F.Supp.2d 915, 922 (N.D. Ill. 2001). The Court therefore dismisses this count, but the dismissal is without prejudice.

Defendant has agreed to dismiss its final counterclaim for invasion of privacy, as corporations have no right to seclusion that is protected by tort law. *See, e.g., American States Ins. Co. v. Capital Assocs. of Jackson Cnty., Inc.,* 392 F.3d 939, 942 (7th Cir. 2004); *Oberweis Dairy, Inc. v. Democratic Cong. Campaign Comm., Inc.,* No. 08 C 4345, 2009 WL 635457, at *2 (N.D. Ill. Mar. 11, 2009).

For all the above reasons, Counter-Defendants' Motion to Dismiss Counterclaims is granted in part and denied in part.

Harry D. Leinenweber, Judge
United States District Court

Dated:10/10/2017