IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **MEYER TECHNOLOGY SOLUTIONS, LLC**, a Missouri Limited Liability Company,<br><br>       Plaintiff,<br><br>     v.<br><br>**KAEGEM CORP.**, an Illinois Corporation,<br><br>       Defendant. | Case No.  17 C 281<br><br>Judge Harry D. Leinenweber |
| **KAEGEM CORP.** an Illinois Corporation,<br><br>       Counter-Plaintiff,<br><br>     v.<br><br>**MEYER TECHNOLOGY SOLUTIONS, LLC**, a Missouri Limited Liability Company, and **MICHAEL MEYER**, Individually,<br><br>       Counter-Defendants. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs/Counter-Defendants Meyer Technology Solutions, LLC, and Michael Meyer (together, "Meyer") move to dismiss Counts IV, V, and VI of Defendant/Counter-Plaintiff Kaegem Corp.'s ("Kaegem") Second Amended Counterclaims for failure to state a claim.  For the reasons stated herein, the Court grants in part

and denies in part Meyer's Motion. (ECF No. 38.) Accordingly, Counts V and VI are dismissed with prejudice.

## I. BACKGROUND

Once more, the parties are before the Court on Plaintiff's Motion to Dismiss Defendant's Counterclaims under Federal Rule of Civil Procedure 12(b)(6). The facts are the same as the last time the Court ruled on such a motion. *Meyer Tech. Sols., LLC v. Kaegem Corp.,* No. 17 C 281, 2017 WL 4512918, at *1 (N.D. Ill. Oct. 10, 2017) (granting in part and denying in part Meyer's 12(b)(6) motion). In brief, Meyer contracted to develop a software platform called "GCT" for Kaegem. Kaegem maintains that it owned the GCT platform outright as of November 2013. After that point, Kaegem allegedly stopped paying for certain upgrades to GCT and, in response, Meyer allegedly accessed the GCT platform and disabled it. Kaegem had by this point negotiated contracts with third-party customers which depended on Kaegem's continued access to and use of GCT. Desperate to preserve its clients, Kaegem hired All Covered, an IT support services company, to restore GCT. All Covered did not provide much relief, however. Once Meyer learned Kaegem had hired them, Meyer reached out to All Covered himself and explained that he, not Kaegem, owned the software. All Covered—now newly apprised of this ownership dispute and apparently uneager to play referee—refused to lend Kaegem further assistance in restoring GCT. Kaegem failed to

restore GCT and eventually lost all of its customer contracts. Meyer sued Kaegem for breach of contract, and Kaegem levied nine counterclaims. After the Court dismissed several of those counterclaims on Meyer's Motion, Kaegem filed six amended counterclaims. (Kaegem's 2d Am. Countercls., ECF No. 36.) Meyer now moves to dismiss three of them, Counts IV, V, and VI, for failure to state a claim.

## II. <u>DISCUSSION</u>

On a motion to dismiss, the Court assumes the truth of well pled factual allegations and draws all inferences in favor of the non-movant (here, Kaegem). *See, Berger v. Nat'l Collegiate Athletic Ass'n,* 843 F.3d 285, 289-90 (7th Cir. 2016). Count IV, for tortious interference with contractual relations, and Count V, for tortious interference with prospective economic advantage, may be considered together. Both require that Kaegem allege Meyer directed some conduct at third-party business contacts that caused those parties to discontinue relations with Kaegem. *F:A J Kikson v. Underwriters Labs., Inc.,* 492 F.3d 794, 800 (7th Cir. 2007) (citations omitted) (describing elements of prospective advantage claim); *accord Nagle v. Chi. Sch. Reform Bd. of Trustees,* No. 96 C 4150, 1999 WL 160234, at *9 (N.D. Ill. Mar. 10, 1999) (citing *Cont'l Mobile Tel. Co. v. Chi. SMSA Ltd. P'ship,* 587 N.E.2d 1169, 1174 (Ill. App. Ct. 1992)) (describing elements of contractual interference claim). Kaegem failed in large part to do so,

meaning, as described below, that Count IV survives only in part and Count V must be dismissed in full.  Finally, Kaegem fails in Count VI to allege a necessary element, so its conversion claim also must be dismissed.

### A.  Count IV (Tortious Interference with Contract) and Count V (Tortious Interference with Business Expectancy)

To state a claim for tortious interference with contract, a plaintiff must allege:  (1) the existence of a valid and enforceable contract between the plaintiff and another; (2) the defendant's awareness of this contractual relation; (3) the defendant's intentional and unjustified inducement of a breach of the contract; (4) a subsequent breach by the other, caused by the defendant's wrongful conduct; and (5) damages.  *Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 842 (7th Cir. 2015) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989)).  To state a claim for tortious interference with prospective economic advantage, a plaintiff must allege:  (1) the plaintiff had a reasonable expectancy of a valid business relationship; (2) the defendant knew about the expectancy; (3) the defendant intentionally interfered with the expectancy and prevented it from ripening into a valid business relationship; and (4) the intentional interference injured the plaintiff.  *Boffa Surgical Grp. LLC v. Managed Healthcare Assocs. Ltd.*, 47 N.E.3d 569, 577 (Ill. App. Ct. 2015) (citation omitted).

To state a claim for either tort, the plaintiff must also allege that the defendant directed his behavior toward a third party. *Inteliquent, Inc. v. Free Conferencing Corp.,* No. 16-CV-06976, 2017 WL 1196957, at *16 (N.D. Ill. Mar. 30, 2017) (collecting cases and noting that in an interference with contract case, plaintiff must allege that defendant directed his behavior toward the third party that defendant induced to breach); *Boffa,* 47 N.E.3d at 577 (plaintiff in interference with prospective advantage case must allege some action by the defendant directed at the third party with whom the plaintiff has the expectancy).

Kaegem's contract interference claim passes this test, but only in part. Kaegem alleges it had contracts with customers as well as a contract with All Covered, the tech support company it hired to help get GCT back online after Meyer allegedly shut it down. But Kaegem never alleges that Meyer directed any conduct toward any of Kaegem's *customers*. The only relevant conduct Kaegem alleges is that Meyer contacted All Covered to explain that he and not Kaegem owned GCT. Thus, Kaegem has stated a claim for tortious interference with contract as to All Covered, but not as to any of its customers. This claim survives, but only to the extent that Kaegem may seek damages for Meyer's alleged interference with the All Covered contract.

Kaegem's prospective advantage interference claim fares even worse because there is no third party that meets the required

criteria. Kaegem states it had business expectancies with several customers, but Kaegem fails to allege that Meyer directed any action toward any of those customers. Again, Kaegem does allege that Meyer directed some action toward All Covered, but by the time Meyer contacted All Covered to tell them (accurately or not) that he owned the GTC software, All Covered and Kaegem were not flirting with some business expectancy; their relationship had already blossomed into contract. Meyer's actions directed toward All Covered cannot be the premise of Kaegem's expectancy claim nor can they rescue the otherwise deficient allegations concerning Kaegem's allegedly ruined business opportunities with its consumers.

This is the second time Kaegem has pressed this claim only to have Meyer move to dismiss it on 12(b)(6) grounds. The last time around, Kaegem responded to Meyer's Motion by seeking to amend the claim and allege properly the required action directed toward a specific third party. (Kaegem's Resp. to First Mot. to Dismiss at 9, ECF No. 28 ("As such facts may indeed exist, specifically that Meyer may have contacted potential investors and persuaded them not to invest in Kaegem, Kaegem requests leave to amend[.]").) The Court granted that leave, yet Kaegem did not provide the allegations it suggested it would and has failed again to craft a valid claim. Accordingly, Count V is dismissed with prejudice.

One further digression is needed to close out the Court's analysis on Counts IV and V. Meyer also argues that both interference claims should be dismissed because the only tortious activity undergirding them is Meyer's alleged violation of the Meyer-Kaegem contract, and "a party cannot be liable in tort for interfering with its own contract." *F.E.L. Publications Ltd. v. Catholic Bishop of Chi.*, 754 F.2d 216, 221 (7th Cir. 1985). According to Meyer, its failure to transfer the software (*i.e.,* the alleged breach) is indistinguishable from its subsequent communication with All Covered (*i.e.,* the allegedly tortious interference). Both are examples of Meyer expressing its ownership over the software, Meyer emphasizes, so the Court should view those acts as one and the same. Meyer says this case is like *Israeli Aircraft Industries, Ltd. v. Sanwa Business Credit Corp.*, 850 F. Supp. 686, 692 (N.D. Ill. 1993), *aff'd sub nom. Israel Aircraft Industries Ltd. v. Sanwa Business Credit Corp.*, 16 F.3d 198 (7th Cir. 1994), where the court agreed the plaintiff had failed to state a claim for tortious interference. In that case, the plaintiff, defendants, and a third party business prospect were parties to a shared agreement. *Id*. at 688. The defendants withdrew from the shared agreement (allegedly in breach) and explained its reasons for doing so to the third party, which then followed suit. *Id.* The court opined that these circumstances did not give rise to a tortious interference claim: "All defendants

did was cut short their own contract negotiations. True, [plaintiff's] joint venture with [the third party] failed as a result of defendants' actions, but the failure was not because defendants directed some action at [the third party] that made [it] quit negotiating with [plaintiff]." *Id.* at 693.

Those facts do not parallel the ones at bar, and the Court is not convinced by Meyer's argument. Meyer reached out to All Covered—a third party unrelated to the Meyer-Kaegem agreement and with whom Meyer had no relationship nor reason to contact— allegedly to blow up All Covered's business relationship with Kaegem. This is a world apart from the preexisting relationship between the defendant and the third party in *Israeli Aircraft*. No matter how Kaegem labels them, Meyer's communications with All Covered are distinguishable from Meyer's failure to transfer the software. Count IV survives, though in the limited form described above.

### B. Count VI (Conversion)

To state a cause of action for conversion in Illinois, a plaintiff must demonstrate: (1) An unauthorized and wrongful assumption of control, dominion, or ownership by a person over the property of another; (2) plaintiff's right in the property; (3) plaintiff's right to immediate possession of the property; and (4) a demand by plaintiff for possession thereof. *Runnemede Owners, Inc. v. Crest Mortg. Corp.,* 861 F.2d 1053, 1060 (7th Cir. 1988)

(citations omitted). Last time around, Kaegem alleged that Meyer unlawfully converted the GCT software. The Court dismissed this claim on 12(b)(6) grounds because under Illinois law software is intangible property not amenable to conversion. *Meyer Tech.*, 2017 WL 4512918, at *3 (citing *First Nat'l Bank of Springfield v. Dept. of Revenue,* 421 N.E.2d 175, 177 (Ill. 1981)). The Court also noted that "[t]o the extent Defendant charges Plaintiff with assuming unauthorized control over tangible information housed within the software, its current allegations do not suggest that this material [is] distinct from the allegedly misappropriated trade secrets recited in Defendant's third counterclaim. As such, the Illinois Trade Secrets Act preempts Defendant's currently pled conversion counterclaim inasmuch as it may implicate tangible information." *Id.*

Kaegem's updated conversion claim alleges that Meyer converted not the software itself but rather GCT-related "proprietary reports and compliance plans." (Kaegem's 2d Am. Countercls. ¶¶ 82-85.) Despite this revision, two problems remain. First, Kaegem fails to allege—as required—that it demanded return of this property. *Runnemede Owners, Inc.,* 861 F.2d at 1060 (stating that plaintiff claiming conversion must allege it demanded possession from defendant). If that were the only problem, the Court would permit Kaegem yet another chance to re-plead its conversion claim. But there is another problem: The

Illinois Trade Secrets Act ("ITSA") preempts the claim. The ITSA "is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." *Spitz v. Proven Winners N. Am., LLC,* 759 F.3d 724, 733 (7th Cir. 2014) (quoting 765 ILCS 1065/8). Since *Spitz,* the key question in determining ITSA preemption has been whether the claim would lie if the information at issue were not confidential. *IPOX Schuster, LLC v. Nikko Asset Mgmt. Co.,* 191 F. Supp. 3d 790, 802 (N.D. Ill. 2016) (describing *Spitz* and progeny). Here, though, Kaegem does not seek recovery for any wrongs beyond the mere misappropriation of "proprietary" information. *Cf. Charles Schwab & Co. v. Carter,* No. 04 C 7071, 2005 WL 2369815, at *4 (N.D. Ill. Sept. 27, 2005). As presently articulated, this claim lives and dies by that information's confidential nature. If Kaegem had showcased these allegedly converted materials on their website "for the world to ogle," Meyer and any other member of the public would have been free to possess them—such possession being impliedly authorized by Kaegem's publication. *Cf. Hecny Transp., Inc. v. Chu,* 430 F.3d 402, 404 (7th Cir. 2005); *see also, Runnemede Owners, Inc.,* 861 F.2d at 1060 (stating conversion claims will not lie unless defendant's assumption of possession is unauthorized). Because Kaegem's conversion claim lacks legs if the at-issue materials were not confidential, that claim is preempted by the ITSA. *See,*

*e.g., Opus Fund Servs. United States LLC v. Theorem Fund Servs., LLC,* 2017 U.S. Dist. Lexis 160649, at *13-14 (finding ITSA preemption over allegations that defendants converted "confidential and proprietary data").

Twice now, Kaegem has failed to state an actionable conversion claim. The Court warned Kaegem before its most recent amendment that ITSA would preempt the claim to the extent it relied on alleged misappropriation of material not distinct from the basis of its ITSA allegations in Count I. Kaegem's persisting failure to state a claim warrants dismissal of Count VI with prejudice.

### III. CONCLUSION

For the reasons stated herein, Meyer's Motion to Dismiss is granted in part and denied in part. Counts V and VI are dismissed with prejudice.

**IT IS SO ORDERED.**

                                              Harry D. Leinenweber, Judge
                                              United States District Court

Dated: 3/22/2018